# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 15-1462V
Filed: September 22, 2017
Not for Publication

```
*************************************
BETSY REDFERN,                      *
                                    *
                                    *        Attorneys' fees and costs decision;
                 Petitioner,        *        lack of reasonable basis
v.                                  *
                                    *
SECRETARY OF HEALTH                 *
AND HUMAN SERVICES,                 *
                                    *
                 Respondent.        *
                                    *
*************************************
```

Maximillian J. Muller, Dresher, PA, for petitioner.
Lisa A. Watts, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION DENYING AN AWARD OF ATTORNEYS' FEES AND COSTS[1]

On December 3, 2015, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012), alleging that her receipt of Twinrix (combined hepatitis A and B) vaccine on June 30, 2014 caused her to develop a shoulder injury related to vaccine administration ("SIRVA").   On February 15, 2017, the undersigned issued a decision dismissing the case.   On June 23, 2017, petitioner filed a motion for attorneys' fees and costs. For the reasons set forth below, the undersigned **DENIES** petitioner's motion for attorneys' fees and costs.

### PROCEDURAL HISTORY

Petitioner filed her petition on December 3, 2015.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy.   When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure.   If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

The case was originally assigned to an attorney in the Special Processing Unit.   On April 4, 2016, respondent filed a Rule 4(c) Report contesting an award of compensation in this case. On June 21, 2016, the case was reassigned to the undersigned.

On July 21, 2016, the undersigned ordered petitioner to show cause why her case should not be dismissed.   The undersigned explained that petitioner's medical records show she did not have SIRVA and that her pain was likely caused by osteoarthritis[2] which a vaccine could not cause.

Petitioner filed her response to the undersigned's Order to Show Cause on October 18, 2016 in which she argued that her "injury and course of treatment is largely consistent with a SIRVA injury."   Show Cause Resp. at 3.   She said she intended to retain an expert to review her medical records and give an opinion on causation.   In the alternative, she asked for the opportunity to have a fact hearing.

During a status conference on November 2, 2016, the undersigned ordered petitioner to file an expert report by January 3, 2017.   On January 3, 2017, petitioner filed a status report explaining she had been unable to retain an expert and said she would file a motion to dismiss her case.

Petitioner filed a motion to dismiss on February 15, 2017.   On the same date, the undersigned granted her motion and filed a decision dismissing the case.

On June 23, 2017, petitioner filed a motion for attorneys' fees and costs.   Petitioner requests $20,673.50 in attorneys' fees and $1,188.64 in attorneys' costs, for a total request of $21,862.14.   In accordance with General Order #9, petitioner said she did not advance any funds in the prosecution of her claim.

On July 7, 2017, respondent filed a response objecting to an award of attorneys' fees and costs because petitioner did not have a reasonable basis to file her claim. Respondent argues that petitioner's petition was not supported by reasonable basis because there is no record of any shoulder injury in the weeks that followed petitioner's receipt of Twinrix vaccine.   Resp. at 7. Moreover, when petitioner did complain of pain, it was pain in her elbow, not her shoulder, and petitioner's doctor's attributed her pain to low-grade tendinopathy from antibiotics, not her Twinrix vaccination.   Id.   Finally, respondent notes that petitioner complained of the same left shoulder pain before her vaccination as she did after her vaccination.   Id.

On July 17, 2017, petitioner filed a reply to respondent's response to her motion for attorneys' fees and costs.   Petitioner argues that she did have a reasonable basis to bring her claim because she was "ultimately diagnosed with tendonitis, bursitis, and adhesive capsulitis, common diagnoses seen in SIRVA cases."   Reply at 3.   Petitioner concedes that petitioner did

---

[2] Osteoarthritis is "a noninflammatory degenerative joint disease seen mainly in older persons, characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane.   It is accompanied by pain, usually after prolonged activity, and stiffness, particularly in the morning or with inactivity."   Dorland's Illustrated Medical Dictionary 1344 (32nd ed. 2012) (hereinafter, "Dorland's).

not seek treatment for over two months after receiving Twinrix vaccine.   However, petitioner's counsel argues that he thought he could overcome this hurdle because petitioner "was an extremely successful, well-spoken businesswoman that was able to explain the gap in treatment and other issues with convincing clarity."   Id.   Petitioner's counsel says he believed the "factual issues could be clarified through litigation."   Id. at 4.   Petitioner cites a case in which attorneys' fees and costs were awarded despite the fact that petitioner ultimately asked for her case to be dismissed because she was unable to find expert support.   Roche v. Sec'y of HHS, No. 15-38V, 2016 WL 4578917, at *3 (Fed. Cl. Spec. Mstr. July 27, 2016).   In Roche, the special master found there was reasonable basis to file the claim because "petitioner's counsel reviewed cases with similar injuries, discussed petitioner's case with her . . . and requested and prepared for filing multiple medical records from several practitioners."   Reply at 4.   Petitioner's counsel argues that he followed the process set out in Roche because he and his firm "utilize a thorough and stringent screening process prior to filing any claim."   Id.   Petitioner argues that her case had reasonable basis up until she found she could not get expert support for her case, at which time petitioner filed a motion to dismiss.   Id. at 5-6.   Finally, petitioner argues that policy considerations support an award of attorneys' fees and costs, as not awarding fees would discourage attorneys from taking vaccine cases.   Id. at 6-7.

This matter is now ripe for adjudication.

## FACTUAL HISTORY

On April 30, 2012, petitioner went to Boulder Creek Family Medicine where she saw PA Sue A. Griffith.   Med. recs. Ex. 8, at 22.   Among her concerns was arthritis in her hands, particularly in the distal interphalangeal joint of the fifth finger of her left hand.   Id. at 22, 23.

On May 22, 2012, petitioner had a bone mineral density study.   Id. at 27.   Petitioner weighed 106 pounds with a height of five foot, nine and one-half inches, which was a risk factor for osteoporosis.   Id.   She had lost one and one-half inches in height.   Id.

On June 11, 2012, petitioner went to North Boulder Physical Therapy for an initial evaluation.   Med. recs. Ex. 2, at 20.   Three weeks earlier, she fell and struck her left kneecap. She reported that she had had numerous falls over the prior two years and was checked for multiple sclerosis, which she did not have.   Id.   She was concerned regarding her strength and lack of balance.   Id.

On June 30, 2014, petitioner received her first Twinrix vaccine in her left deltoid.   Med. recs. Ex. 1.   She received the second dose of Twinrix, also in her left deltoid, on July 28, 2014. Id.

Two and one-half months after receiving her first Twinrix dose, petitioner told her personal care physician Dr. Leto Quarles that she was experiencing "occasional brief twinges of intense and very localized but migratory pain near joints with certain movements, most frequently above the left elbow."   Med. recs. Ex. 8, at 59.   Dr. Quarles attributed this pain to tendinopathy[3]

---

[3] Tendinopathy is "any pathological condition of a tendon . . . ."   Dorland's at 1881. A tendon is "a fibrous cord of connective tissue by which a muscle is attached . . . ."   Id.

caused by antibiotics she was taking for to treat mycobacterium avium-intracellulare.[4]   On physical examination of petitioner's left upper extremity, she had no tenderness to palpation.   Id. at 63.   Petitioner had normal shoulder, elbow, and wrist joint stability.   Id.   She had normal range of motion.   Id.   There was no joint crepitus present and no pain with motion.   Id.

Three days later on September 19, 2014, petitioner saw Dr. William J. Williams, an orthopedist.   Med. recs. Ex. 2, at 8.   Her chief complaint was left upper arm/shoulder pain for about four months with decreased motion, but no specific injury.   Id.   Petitioner told Dr. Williams that she had episodes of acute pain in her left biceps muscle.   Pain in petitioner's left biceps often occurred when she extended the arm and externally rotated it and when she moved her arm behind her back.   Id.   She said she had had the pain for four months.   Id.   Petitioner also had some pain in her left cervical (neck) region.   Id.   She had a history of some chronic neck pain she thought was related to her doing a lot of travel for her job as an engineer.   Id. Petitioner said she lifted luggage regularly and picked up her 40-pound five-year-old grandson. Id.

On physical examination, petitioner did not have any apparent asymmetry between her left versus right biceps or deltoid muscle.   Id.   Petitioner did not have any tenderness over her biceps or proximal humerus.   Id.   Her left shoulder was tender at the posterior and anterior glenohumeral joint.   Her acromioclavicular ("AC") joint was non-tender.     She had slight anterior subacromial tenderness.   Petitioner could actively elevate her left arm to 150 degrees and go to 170 degrees with a stretch.   Full external rotation was uncomfortable at 60 degrees.   Internal rotation was more painful and mildly limited.   Getting her wrist to her lower lumbar region caused a fair amount of pain and a negative posterior liftoff test.   Petitioner had satisfactory rotator cuff strength on resisted internal and external rotation with the arm at 90 degrees of abduction. Petitioner's impingement tests were mildly positive.   Her grip strength in her left upper arm was intact.   An x-ray of petitioner's shoulder showed moderate glenohumeral osteoarthritis with subchondral sclerosis and irregularity of the glenoid with a 1 mm. rimming osteophyte.[5]   Id.   She had an early osteophyte at the inferior head-neck junction.   Id.   Petitioner had only one or two millimeters of joint space narrowing on the axillary view.   Id.   Dr. Williams diagnosed petitioner with moderate glenohumeral osteoarthritis with referred left upper arm and shoulder pain.   Id. He also diagnosed her with rotator cuff syndrome and neck pain.   Id. at 9.   Dr. Williams suggested to petitioner that he administer a glenohumeral cortisone injection to relieve petitioner's symptoms, but petitioner did not think her pain was bad enough to have the injection. Id.   Instead, she accepted a prescription for physical therapy and the recommendation of taking Aleve and icing when needed.   Dr. Williams suggested petitioner avoid overhead lifting and strengthening as that would likely aggravate her glenohumeral osteoarthritis.   Id.

On October 21, 2014, petitioner had a bone mineral densitometry or DEXA performed. Id. at 17.   She had lost two inches in height.   Her results showed she had osteoporosis.   Id.

On November 5, 2014, Dr. Christophe A. Nusser did an MRI of petitioner's left shoulder

---

[4] Mycobacterium avian-intracellulare complex is "a complex of *Mycobacterium avium* and *M. intracellulare* that causes tuberculosis in birds and swine and is associated with human pulmonary disease . . . ."   Dorland's at 397.
[5] An osteophyte is "a bony excrescence or osseous outgrowth."   Dorland's at 1348.

without contrast to evaluate her for labral or rotator cuff tear.   Id. at 15.   Dr. Nusser found minimal degenerative change in petitioner's acromioclavicular joint.   There was a mild subacromial-deltoid fluid collection.   Petitioner had mild abnormal signal intensity in her distal supraspinatus tendon with mild bursal surface fraying and attenuation in the distal of 1 cm.   She had mild edema at the musculotendinous junction of the infraspinatus.   Petitioner had mild abnormal signal intensity in the intraarticular portion of her long head biceps tendon and attenuation at the biceps anchor.   She had degenerative signal and fraying in her superior labrum at the biceps anchor and fraying or partial tear at the posterior superior labrum with a diminutive appearance.   There was mild cartilage signal abnormality and thinning in the posterior superior glenoid.   The inferior capsule was thickened with pericapsular edema.   Id.

On November 12, 2014, petitioner saw Dr. Khemarin R. Seng, an orthopedist, complaining of a left frozen shoulder.   Med. recs. Ex. 4, at 21.   She said she had an insidious onset three months earlier, putting onset in mid-August 2014 six weeks after her first Twinrix vaccination.   In 2013, petitioner had flown 10 million miles.   Id.   She said she slept in odd positions.   Id.   She carried luggage awkwardly.   Id.   In addition, petitioner could not remember a specific incident that could have injured her left shoulder.   Id.   She saw Dr. Williams and received a posterior shoulder injection, which did not help.   She underwent an MRI which showed multiple tears.   She went to Dr. Seng for a second opinion.   Id.   Dr. Seng gave petitioner an anterior shoulder glenohumeral joint injection.   Id.   He prescribed physical therapy three times a week for four weeks.   Id.

On November 17, 2014, petitioner went to ALTA Physical Therapy with a diagnosis of adhesive capsulitis which had an insidious onset a couple of months ago (or September 2014). Med. recs. Ex. 5, at 1.

On December 15, 2014, petitioner saw Dr. Seng to discuss left shoulder surgery scheduled for January 5, 2015.   Med. recs. Ex. 4, at 18.   Her pain was better, but her limited motion was the same.   Physical therapy improved her motion, but then it reverted to its limited state.   Id. On physical examination, petitioner did not have any significant pain.   Id.   Her MRI of the left shoulder showed mild tendinopathy and mild arthritis.   Id.   Petitioner said she wanted to proceed with scope, cleanup, and capsular release with manipulation.   Id.

On January 20, 2015, petitioner saw Dr. Seng.   Id. at 16.   Petitioner said her left shoulder felt okay, the pain was minimal, but her shoulder motion had not improved.   Id.   She wanted to postpone surgery until summer to see if her motion improved.   Id.

On February 17, 2015, petitioner saw Dr. Seng.   Id. at 13.   She said her left shoulder pain was better but her shoulder movement had not improved.   Id.

On March 9, 2015, petitioner had surgery on her left shoulder for adhesive capsulitis, impingement, rotator cuff tear, and synovitis.   Id. at 28.   As part of the surgery, Dr. Seng removed a large distal clavicle osteophyte inferiorly hanging.   Id. at 29.

On March 16, 2015, petitioner saw Dr. Seng for a post-op visit.   Id. at 11.   Dr. Seng said petitioner's shoulder looked great.   Id.   She had minimal pain but more pain with internal rotation.   Id.

On April 14, 2015, petitioner saw Dr. Seng for a re-check of her left shoulder.  Id. at 9. Her left shoulder was better than before, but petitioner had not kept up with stretching.   Id.   Dr. Seng requested she refocus on motion and showed her some physical exercise.   Id.

## DISCUSSION

## I.      Entitlement to Fees Under the Vaccine Act

### a.  Legal Standard

Under the Vaccine Act, a special master or the U.S. Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard.   Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).   A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.  Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).   Petitioners are "entitled to a presumption of good faith."   Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Rules.   It has been determined to be an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011).   In determining reasonable basis, the court looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim." Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)).   Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6–*9.

Traditionally, special masters have been "quite generous" in finding reasonable basis. Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, No. 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation—militates in favor of a lenient approach to reasonable basis.").   However, as former-Chief Judge Campbell-Smith noted in her affirmance of Special Master Moran's decision not to award attorneys' fees in Chuisano, "Fee denials are expected to occur.   A different construction of the statute would swallow the special master's discretion." Chuisano v. United States, 116 Fed. Cl. 276, 286 (Fed. Cl. 2014).   See also Dews v. Sec'y of HHS, No. 13-569V, 2015 WL 1779148 (Fed. Cl. Spec. Mstr. Mar. 30, 2015) (in which the undersigned found petitioner was not entitled to attorneys' fees and costs because she did not have a reasonable basis to bring the petition).

### b.  Good faith and reasonable basis

Petitioner is entitled to a presumption of good faith, and respondent does not contest that the petition was filed in good faith.   Grice, 36 Fed. Cl. at 121.   There is no evidence that this petition was brought in bad faith.   Therefore, the undersigned finds that the good faith requirement is satisfied.   However, for the reasons outlined below, the undersigned agrees with respondent that petitioner did not have a reasonable basis to bring her claim.

Petitioner's medical records show she did not have SIRVA and that her pain was likely caused by osteoarthritis, which a vaccine could not cause.   Petitioner did not complain of pain until two and one-half months after receiving her first Twinrix dose, when she told her personal care physician Dr. Leto Quarles on that she was experiencing pain in joints.   However, petitioner specifically complained of pain in her elbow, not in her shoulder.   Med. recs. Ex. 8, at 59.   Dr. Quarles attributed this pain to tendinopathy caused by antibiotics.   Id.   Dr. Quarles' examination of petitioner's left upper extremity showed she had no tenderness to palpation and that she had normal shoulder, elbow, and wrist joint stability and normal range of motion, which contradicts her claim that Twinrix vaccine caused her to develop SIRVA.

Moreover, when petitioner saw Dr. Williams three days later on September 19, 2014, she told Dr. Williams that she had experienced upper left arm and shoulder pain for about four months with decreased motion, which would put onset before her receipt of Twinrix.   Med. recs. Ex. 2, at 8.   Petitioner attributed that pain to chronic neck pain related to her travelling for her job as an engineer.   Id.   Petitioner said she lifted luggage regularly and picked up her 40-pound five-year-old grandson.   Id.   Dr. Williams' examination of petitioner showed that petitioner did not have any apparent asymmetry between her left versus right biceps or deltoid muscle.   As the undersigned explained in her Order to Show Cause, when an arm or shoulder is painful, a person will not use it as much, causing the biceps or deltoid muscle to atrophy.   Since petitioner's left and right biceps and left and right deltoid muscles were symmetrical on September 19, 2014 when Dr. Williams examined her, it follows that she had been using her left arm normally since June 30, 2014, the date of her first Twinrix vaccination.

Counsel has a duty to investigate a claim before filing it.   In Rehn v. Secretary of Health and Human Services, Judge Lettow explained: "if an attorney does not actively investigate a case before filing, the claim may not have a reasonable basis and so may not be worthy of attorneys' fees and costs."   126 Fed. Cl. 86, 93 (Fed. Cl. 2016).   Review of petitioner's medical records would have shown petitioner's attorney that petitioner did not have a reasonable basis to bring her claim.

Petitioner did not contact her counsel on the eve of the running of the statute of limitations.   She received flu vaccine on June 30, 2014.   Even if petitioner's alleged vaccine injury began the day she received the vaccine, she had until June 30, 2017 before the statute of limitations would run on her claim.   Petitioner's attorney's billing records show petitioner had contacted counsel by February 3, 2015, over two years and four months before the running of the statute of limitations.   Fee App., Ex. A, at 1.   This should have been plenty of time for petitioner's counsel to receive and review petitioner's medical records and discover the same issues that led to the dismissal of petitioner's case.   Petitioner's counsel had ample time to perform this due diligence.   See Chuisano v. Sec'y of HHS, 116 Fed. Cl. 276, 291 (May 15, 2014) (finding that a special master acted within his discretion in not finding reasonable basis because, in part, the attorneys did not establish diligence and noting "an earlier telephone call to

one of the firm's regularly retained experts might have provided some evidence of timely due diligence"); Solomon v. Sec'y of HHS, No. 14–0748V, 2016 WL 8257673, at *4 (Fed. Cl. Spec. Mstr. Oct. 27, 2016) ("Petitioner's counsel still is required to perform due diligence, given the available evidence and amount of time prior to the running of the statute of limitations.").

## CONCLUSION

The undersigned finds that an award of attorneys' fees and costs to petitioner is unreasonable.   Therefore, the undersigned **DENIES** petitioner's motion for attorneys' fees and costs.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[6]

**IT IS SO ORDERED.**

Dated: <u>September 22, 2017</u>                          <u>s/ Laura D. Millman</u>
                                                                    Laura D. Millman
                                                                    Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.